# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **LOUANNE R. KON,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 2:25-cv-00203-RDP |
| **FRANK BISIGNANO, Commissioner,** Social Security Administration, | } |
| **Defendant.** | } |

## MEMORANDUM OPINION

Plaintiff Louanne Kon brings this action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for a period of disability insurance benefits ("DIB"). *See* 42 U.S.C. § 423. After careful review of the record and the briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff completed her application for DIB on September 16, 2021, alleging disability beginning December 31, 2011. (Tr. 170-75). To be eligible for DIB, a claimant must prove that she became disabled before the expiration of her disability insured status. 42 U.S.C. §§ 423(a)(1)(A), (c)(1). The parties agree that Plaintiff has met the insured requirement through December 31, 2016, her date last insured. (Tr. 187). The application was originally denied by the Social Security Administration ("SSA") on July 22, 2022, and again on reconsideration on January 9, 2023. (Tr. 69-82). After a hearing was held on August 1, 2023 (Tr. 40-68), Administrative Law Judge ("ALJ") Monica Jackson issued an October 4, 2023 decision finding that Plaintiff was not

disabled. (Tr. 10-21). On December 11, 2024, the Appeals Council denied Plaintiff's request for reconsideration, making the ALJ's decision the final decision of the Commissioner. (Tr. 1). Plaintiff then filed this action, making this case a proper subject for this court's appellate review.

At the August 1, 2023 hearing before the ALJ, Plaintiff testified that she has an associate's degree that allowed her to work at St. Vincent's Hospital in the respiratory department. (Tr. 46-47). While at St. Vincent's, she held the roles of unit secretary, staff therapist, and then a management position within the respiratory department. (Tr. 47-48). Plaintiff testified that she had degenerative joint disease, and that her functionality had deteriorated to the point where she could no longer perform her work. (Tr. 49-50). For instance, Plaintiff testified that her condition caused her excruciating back pain, which prevented her from doing basic functions for herself, such as bending over or cleaning herself. (Tr. 49). At work, she stated that she would injure herself falling, and she broke both of her wrists. (*Id.*). She stated that her job required her to use her entire body to lift patients, perform tasks such as CPR, or run down the hallway in the event of a code. (Tr. 50). She stated that her condition made her unable to adequately do these things. (*Id.*). Plaintiff no longer works and relies on her husband as both her primary source of income and her means for transportation. (Tr. 46).

Though the hearing took place in 2023, the relevant inquiry was whether Plaintiff was disabled before her date last insured (December 31, 2016). After listening to Plaintiff's testimony about her condition, the ALJ pointed out to Plaintiff that a medical record from an April 2016 visit to the Birmingham Heart Clinic described Plaintiff as "doing fairly well," noting that she "performs day to day activities without cardiovascular limitation." (Tr. 51, 860). A June 2016 visit stated that she had a "normal gait," was "able to stand without difficulty," and was "able to undergo

exercise testing." (Tr. 51, 858). Plaintiff stated that she did not recall undergoing exercise testing with the Birmingham Heart Clinic other than a seated stress test. (Tr. 51).

The ALJ then asked Plaintiff about an EMG study performed by Birmingham Neurosurgery, which stated that the left lower extremity was normal and the study for the right lower extremity was declined by Plaintiff. (Tr. 52, 383). Plaintiff stated that this was due to the fact that the study on the left leg was so painful that she "absolutely refused" to complete the test on the right leg. (Tr. 52).

Plaintiff testified that, prior to 2016, she had taken Celebrex but could not recall the entire list of medications she was taking for her heart and back issues. (Tr. 54). She testified that she remembered taking something for her blood pressure, a cholesterol medication, and Plavix. (*Id.*). Plaintiff testified she experienced swelling in her feet, headaches, drowsiness, and fatigue as a result but could not identify which medications caused which symptoms. (Tr. 54-55).

The ALJ asked Plaintiff how she spent a typical day before her date last insured. (Tr. 55). Plaintiff testified that she was unable to do anything and that she was "not really able to ambulate at all." (*Id.*). Plaintiff said her pain was so excruciating that she had hoped to have surgery but there was a two-year waiting period. (Tr. 56-57). In response, the ALJ referred Plaintiff to a medical record from Birmingham Neurosurgery, which stated that they were treating her pain with conservative pain management techniques and that there were no surgical plans as of October 2015. (Tr. 57-58, 391). Plaintiff stated that there were further records saying that she is "inoperable," and would therefore not be eligible for surgery. (Tr. 58). However, at the hearing, neither Plaintiff nor her lawyer could produce any such record. Plaintiff stated that she tried to treat her condition instead with a "lifelong pain block," but that the block offered no relief, so she chose not to move forward with the block considering the risk of embolism and death. (Tr. 59).

She likewise testified that drug treatments were not an option for her due to her damaged liver. (*Id.*).

When questioned by her attorney, Plaintiff elaborated on her pain. She stated that it was centered in her back and neck and that it was "excruciating" before the date last insured. (Tr. 60-61). Plaintiff clarified that while dealing with the neck and back pain, she also began having chest pains and heart problems. (Tr. 61). She testified that she fell and fractured both of her wrists in 2015. (Tr. 61). Even after these injuries healed, Plaintiff stated that she was unable to lift things, open a cabinet, open a draw, grasp a pencil, button her shirt, flush a toilet, turn on a sink, or grasp a fork. (Tr. 61-62). Plaintiff further testified that before the date last insured, she could only stand or walk for minutes before needing to sit down and she could only sit upright if she changed positions every couple of minutes. (Tr. 63). Plaintiff testified that she relied on her husband to bathe her and that she has a lift chair to assist her in the home. (Tr. 63-64).

**II.    ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." *Id.* § 1572. "Substantial" work activity is work that involves doing significant physical or mental activities. *Id.* § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. *Id.* § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of these criteria, then the claimant cannot claim disability. *Id.* § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. *Id.* § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability.

*Id*.  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See id*. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, the claimant is declared disabled.  *Id*. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  *Id*. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id*.  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  *Id*. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  *Id*. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. *Id*. §§ 404.1520(g), 404.1560(c).

Here, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date (December 31, 2011). (Tr. 12). Based on the medical evidence presented, the ALJ concluded that Plaintiff had the following severe impairments since her alleged onset date: coronary artery disease, hypertension, hyperlipidemia, morbid obesity, and degenerative disc disease. (*Id.*). Nevertheless, the ALJ determined that, through December 31, 2016, the last date

insured, none of Plaintiff's impairments or combination of impairments met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart B, Appendix 1. (Tr. 13).

After consideration of the entire record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except occasional operation of foot controls, and subject to the following limitations: Plaintiff can never climb ropes, ladders, or scaffolds; she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; she can frequently reach, handle, and finger bilaterally; she can never be exposed to high, exposed places or moving mechanical parts. (Tr. 14). In making this determination, the ALJ found that statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the objective medical evidence. (Tr. 14-19).

Based on this RFC, the ALJ concluded that Plaintiff is unable to perform any of her past relevant work. (Tr. 19). The ALJ noted that Plaintiff's past relevant work was composed of two different jobs – office manager and respiratory therapist. (*Id.*). Though the office manager position was sedentary, the ALJ noted that it was performed at a medium exertional level. (*Id.*). The ALJ noted that transferability of job skills was immaterial to any determination of disability because the Medical-Vocational Rules support a finding of "not disabled" whether or not Plaintiff has transferable skills. (*Id.*).[1]

Further, the ALJ found that through the date last insured, and considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 20). The ALJ relied on the testimony of the vocational expert, who testified that given Plaintiff's RFC and limitations, she would have been able to perform the requirements of representative occupations such as routing clerk, marker, and mail clerk. (Tr. 20,

---

[1] Plaintiff was 48 years old on the date last insured. (Tr. 19).

66). Finally, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from December 31, 2011 through December 31, 2016. (Tr. 21).

### III. Plaintiff's Argument for Remand

Plaintiff appeals the ALJ's denial of disability insurance benefits. She presents just one argument for remand: that the ALJ failed to properly evaluate her complaints of pain under the Eleventh Circuit's pain standard when determining her RFC.

### IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited

in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V. Discussion

Plaintiff argues that the ALJ erred by improperly discounting her own testimony about her pain. (Doc. # 8 at 5-14).[2] Specifically, she challenges the ALJ's finding that "Plaintiff's description of debilitating pain and limitations was inconsistent with the objective medical evidence of record." (*Id.* at 9).

When a claimant seeks to establish disability based on subjective pain testimony and symptoms, the Eleventh Circuit's pain standard applies. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The standard requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonable expected to give rise to the alleged pain." *Id.* (citing *Landry v. Heckler*, 782 F.3d 1551, 1553 (11th Cir. 1986)); *see Jones v. Comm'r, Soc. Sec. Admin.*, No. 22-13659, 2023 WL 7294879 (11th Cir. Nov. 6, 2023) (unreported); *see also* 20 C.F.R. § 404.1529. Thus, a claimant's testimony about her pain does not alone suffice to establish a disability. *See* 20 C.F.R. § 404.1529(a).

In appropriate cases, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms" in order to determine how those symptoms "limit [the claimant's] capacity for work." *Id.* § 404.1529(c)(1). In evaluating the intensity and persistence of the alleged pain, the

---

[2] Plaintiff additionally argues that the ALJ "failed to account for medical evidence that could reasonably be expected to produce the pain the Plaintiff has described." (Doc. # 8 at 13). Plaintiff further argues that the ALJ "ignored or misconstrued evidence which undermines her conclusion that Plaintiff could perform a range of light work." (*Id.*). However, Plaintiff fails to identify the medical evidence that would support her claim, as well as any legal arguments in furtherance of this claim. Even if she had identified specific medical evidence, she would be asking this court to re-weigh the medical evidence, which is improper. *See Martin*, 894 F.2d at 1529.

ALJ will consider objective medical evidence but not discount the claimant's subjective statements. *See id.* § 404.1529(c)(2). The ALJ also considers nonmedical evidence presented in support of alleged pain symptoms because pain is "subjective and difficult to quantify." *Id.* § 404.1529(c)(3). But an ALJ evaluates the evidence, including the claimant's statements about pain, "in relation to the objective medical evidence and other evidence" in its entirety and considers "whether there are any inconsistencies" or any "conflicts between [the claimant's] statements and the rest of the evidence." *Id.* § 404.1529(c)(4).

Here, the ALJ acknowledged Plaintiff's severe impairments, including coronary artery disease, hypertension, hyperlipidemia, morbid obesity, and degenerative disc disease. (Tr. 12).[3] In doing so, she determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (Tr. 14). The ALJ then evaluated the "intensity, persistence, and limiting effects of the symptoms." (*Id.*). The ALJ correctly considered both medical evidence and nonmedical evidence and articulated her reasoning for why she found Plaintiff's subjective complaints to be inconsistent with the medical evidence. (Tr. 15-19). Specifically, she stated that "the objective evidence in the form of imaging records, examination findings, and various test results fail to support [Plaintiff]'s reports of very limited functional ability as she routinely presented with a normal gait, normal range of motion in the extremities bilaterally, and normal muscle strength." (Tr. 15).

Based on her findings and consideration of all the evidence, the ALJ found that "the evidence does not support the degree of limitation alleged by [Plaintiff] through the date last insured." (Tr. 18). The ALJ also noted that she "generously considered [Plaintiff]'s subjective complaints in the residual functional capacity assessment, which takes full account of the objective

---

[3] Though not found to be severe impairments, the ALJ also acknowledged Plaintiff's history of ulnar fractures, as well as a left knee cyst. (Tr. 12-13).

9

findings, and accords [Plaintiff] every reasonable benefit of the doubt." (Tr. 18). It is clear that the ALJ considered Plaintiff's subjective complaints of pain alongside the objective medical evidence in rendering her decision. This court cannot re-weigh the evidence or instruct the ALJ to give greater weight to one type of evidence over another. *See Martin*, 894 F.2d at 1529. The ALJ fully considered the record in her evaluation of the "intensity and persistence" of Plaintiff's symptoms and whether they "limit [her] capacity for work," and substantial evidence supports the ALJ's determination that Plaintiff was not disabled as of the date last insured. *See* 20 C.F.R. § 404.1529(c)(1).

### VI.  Conclusion

The court concludes that the ALJ's determination that Plaintiff was not disabled as of the date last insured is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this February 2, 2026.

_____
**R. DAVID PROCTOR**
SENIOR U.S. DISTRICT JUDGE